**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re: ) | |
| ) | |
| **315 FRANKLIN, LLC,** ) | Case No. 17-00512-SMT |
| ) | |
| **Debtor in possession.** ) | **(Chapter 11)** |
| ) | |

**DEBTOR'S MOTION FOR ORDER APPROVING SALE OF DEBTOR'S
<u>REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS</u>**

315 Franklin, LLC, the debtor-in-possession (the "Debtor"), by counsel, respectfully moves for an order, pursuant to sections 363(b)(1) and 363(f) of the Bankruptcy Code[1], Federal Rule of Bankruptcy Procedure 6004, and Local Bankruptcy Rule 6004-1, authorizing the sale to NOVO Development Corporation ("NOVO"), a District of Columbia Corporation, free and clear of liens and interests (other than existing tenant leases), of the real property located at 315-325 Franklin Street, N.E., Washington, D.C. 20002, which is improved by a 76-unit residential apartment project known as East and West Panorama Court (together with certain related personal and intangible property, the "Property").

Two consensual liens encumber the Property: (a) a first-priority deed of trust securing a promissory note dated June 22, 2012, in the original principal amount of $4,227,000, assigned to Federal National Mortgage Association ("Fannie Mae"), and (b) a second-priority deed of trust securing a promissory note dated December 30, 2013, in the original principal amount of $1,200,000, also assigned to Fannie Mae.[2]  In addition, the District of Columbia recorded Litter

---

[1] Unless otherwise indicated, all statutory references in this Motion are to the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

[2] Payoff statements provided by Fannie Mae and dated as of September 14, 2017, show payoff amounts for the notes of $4,382,072.05 and $1,405,511.44, respectively.

Control Administration Act liens against the Property on November 13, 2015 in the amount of $600, and on December 19, 2016 in the amount of $4,500.

The proposed sale is for a gross purchase price of $9,000,000, which will enable the Debtor to pay all of its creditors in full. The sale will also, as a practical consequence, transfer from the Debtor to NOVO the risk of loss, the burdens of administering the Project, and any liabilities for housing code violations that might exist at the Project, thus effectively guaranteeing a successful chapter 11 case.

## JURISDICTION

1. The Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. The Motion is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

2. The statutory and other predicates for the relief sought by this Motion are sections 363(b)(1) and 363(f) of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 6004, and Local Bankruptcy Rule 6004-1.

## I.

## BACKGROUND[3]

**A.   The Property to be Sold**

3. On September 13, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, initiating this chapter 11 case (the "Chapter 11 Case"). The Debtor continues to operate its business as a debtor in possession under

---

[3] The factual assertions in this Motion are supported by the Declaration of A. Carter Nowell, the manager of the Debtor, which is attached hereto as Exhibit "A." The Debtor anticipates that Mr. Nowell will be available as a witness at any hearing on the Motion.

sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner, and no official committee of creditors has been appointed.

4.   The Debtor owns, and through a related management company, manages and operates, the East and West Panorama apartment project on the Property.[4]

5.   The Debtor purchased the Property from Shirley M. Singletary and Cornelius C. and Emma I. Dudley on April 25, 2012.

**B.   The Claims Against the Debtor**

6.   The Debtor re-financed the Property through a June 22, 2012 loan from Centerline Mortgage Capital Inc. ("Centerline") under the terms of a MultiFamily Loan and Security Agreement (the "First Loan Agreement"). The First Loan Agreement is memorialized by a certain MultiFamily Note ("First Note"), dated as of June 22, 2012, in the original principal amount of $4,227,000.

7.   On or about December 30, 2013, Centerline loaned the Debtor $1,200,000, under the terms of a MultiFamily Loan and Security Agreement (the "Second Loan Agreement, and together with the First Loan Agreement, the "Loan Agreements"). The Second Loan Agreement is memorialized by a certain MultiFamily Note (the "Second Note" and together with the First Note, the "Notes"), dated as of December 30, 2013, in the original principal amount of $1,200,000.

8.   The loans evidenced by the Notes and the Loan Agreements are secured by first and second priority liens and security interests in the Debtor's assets, including the Property, the improvements thereon, the rents generated by the Property, and other assets.

---

[4] A copy of the legal description of the Property is attached hereto as Exhibit "B".

9. Centerline has endorsed the Notes and assigned the Loan Agreements and related security instruments to Fannie Mae, which holds perfected first and second priority liens and security interests against the Property and other assets of the Debtor.

10. Fannie Mae has (a) declared the Notes in default, (b) accelerated all amounts due thereunder, (c) filed suit against the Debtor under the Notes and Loan Agreements, (d) sought to conduct a foreclosure sale of the Property, and (e) sought the appointment of a receiver to take control of the Property. Fannie Mae asserted in a July 31, 2017 Complaint against the Debtor in the Superior Court of the District of Columbia that the aggregate amounts due under the Notes exceeded $5.7 million.

11. The Debtor's schedules, as filed with the Court on October 11, 2017 [Docket No. 41], reflect that as of the Petition Date there were unsecured priority claims against the Debtor's estate of approximately $39,043, and unsecured, non-priority, non-insider claims against the Debtor's estate of approximately $93,704, for total non-insider unsecured claims of approximately $132,747. While it is possible that additional prepetition, non-insider unsecured claims against the Debtor may hereafter be identified or asserted, the Debtor is unaware of significant non-insider prepetition claims other than those subsumed within the foregoing aggregate figures.[5]

12. Since acquiring the Property, the Debtor has used its revenues to pay for quality services to its residents and to maintain and improve the Property's physical condition and

---

[5] The Debtor is currently reconciling its books and records regarding prepetition transactions between the Debtor and certain insider and affiliated entities. Debtor's management anticipates that any net insider claims against the Debtor's estate will have no effect on the Debtor's ability to satisfy all non-insider claims, including, but not limited to, the secured claims of Fannie Mae and the District of Columbia. The Debtor anticipates amending its schedules of assets and liabilities to reflect any insider transactions.

systems.  Nonetheless, the Property has not generated sufficient cash flow to permit the Debtor to satisfy all of its loan and operational obligations as they have come due.

13. In light of the Debtor's limited financial success and Fannie Mae's efforts to take control, and conduct a foreclosure sale of, the Property, the Debtor determined that it was in its best interests, and that of its residents and creditors, to sell the Property to an independent third party at a price that would allow the Debtor to satisfy the Notes and the Debtor's other financial obligations.

**E.    Purchase Agreement with NOVO**

14. In 2016, the Debtor formally listed the Property for sale with Greysteel, a national transactional commercial property advisor for private, middle-market and institutional investors. Greysteel maintains a website at www.greysteel.com.   During the time the Property was listed with Greysteel, the Debtor did not receive any satisfactory purchase offers.

15. In 2017, the Debtor contacted purchasers who had previously expressed an interest in the Property.  Through this process, the Debtor received several letters of intent.  The Debtor determined, in the exercise of its business judgment, that the letter of intent submitted by NOVO represented the highest and best offer to purchase the Property.   Thereafter, the Debtor and NOVO engaged in arm's length negotiations which resulted in the Purchase  and Sale Agreement (the "Purchase Agreement"), dated as of September 12, 2017, for the sale of the Property to NOVO for the cash price of $9,000,000.  The Purchase Agreement is attached hereto as Exhibit "C".

16. NOVO's website at www.livenovo.com, reflects that NOVO was founded in 2003,  and is a multi-family owner, developer, asset and property management organization headquartered on Capitol Hill in Washington, DC. NOVO currently manages a portfolio of

approximately 2,000 apartment units throughout Washington, DC, Chicago, Philadelphia, Charleston, South Carolina, and Cambridge, Maryland. NOVO currently owns or manages over 20 apartment projects in Washington, DC.

17. Neither the Debtor nor any of its members has any prior relationship with NOVO, and there is no agreement or understanding between the Debtor and NOVO other than as set forth in the Purchase Agreement. Accordingly, it is the Debtor's belief that NOVO is a disinterested third party with respect to the Motion and NOVO's proposed purchase of the Property.

18. Pursuant to the section 2.2 of the Purchase Agreement, NOVO has lodged an earnest money deposit of $200,000 with Premium Title & Escrow, which will be applied against the purchase price at closing. Under Section 2.5 of the Purchase Agreement, closing on the sale of the Property to NOVO is to occur 30 days following Court approval of the sale.

**F.**    **Consequences of the Sale and the Absence of Need for Additional Marketing**

19. Secured and non-insider unsecured claims against the Debtor are approximately $5,920,330, while the gross sale proceeds under the Purchase Agreement will be $9,000,000. Accordingly, the sale will permit the Debtor to pay all of its secured and non-insider unsecured creditors in full and in cash. The sale will also transfer risk of loss as to the Property to NOVO and will relieve the Debtor of any management responsibilities, so that post-sale, the Debtor's primary focus will be the determination and payment of creditor claims.

20. The members of the Debtor and their respective membership percentages are identified on the List of Equity Security Holders attached as Exhibit "D" hereto. Once creditors are paid in full, the members of the Debtor will be entitled to the remaining sale proceeds. Because the members will receive the proceeds of sale, net of creditor claims, the members alone

have an interest in the adequacy of the sale price under the Purchase Agreement. Members of the Debtor support the Purchase Agreement. Accordingly, because creditors will be paid in full and the members are satisfied with the sale price, the Debtor submits that no further marketing of the Property is necessary.

## II.

### THE SALE SATISFIES THE SOUND BUSINESS PURPOSE TEST AND SHOULD BE AUTHORIZED PURSUANT TO SECTION 363(b) OF THE BANKRUPTCY CODE

21. Pursuant to section 363(b) of the Bankruptcy Code, the Debtor may, after notice and hearing, sell property of the estate other than in the ordinary course of business. Courts generally authorize pre-confirmation sales of assets outside the ordinary course of business upon the articulation of a valid business justification. See, e.g., In re MCSGlobal Incorporated, 562 B.R. 648, 654 (Bankr. E.D. Va. 2017) (requiring a "sound business purpose"); In re Flour City Bagels, LLC, 557 B.R. 53, 77 (Bankr. W.D.N.Y. 2016) ("good business reason"); Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991) ("articulated business justification"); Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) ("good business reason"); In re Lady H Coal Co., Inc., 193 B.R. 233, 243 (Bankr. S.D. W. Va. 1996) ("sound business purpose"); WBQ P'ship v. Commonwealth of Va. Dep't of Med. Assistance Serv. (In re WBQ P'ship), 189 B.R. 97, 102 (Bankr. E.D. Va. 1995) (adopting "sound business purpose" test).

22. A debtor has the burden of demonstrating by a preponderance of the evidence that a sale outside the ordinary course of business is justified, but an objecting party also must produce evidence with respect to its objections. See In re Flour City Bagels, 557 B.R. 77 (citing Lionel, 722 F.2d at 1071).

23. In applying the sound business purpose test, courts consider four elements: (a) a sound business reason or emergency justifying a pre-confirmation sale; (2) that the sale has been proposed in good faith; (3) adequate and reasonable notice to interested parties; and (4) a fair and reasonable purchase price. In re MCSGlobal Incorporated, 562 B.R. at 654; see also In re William Maxwell Gregg, II, 2014 WL 793126 at *3 (Bankr. D.S.C. Feb. 26, 2014); In re Lady H Coal Co., 193 B.R. at 243. Each of these elements is satisfied in the present case.

### A. A Sound Business Reason Exists for the Sale

24. The soundest of business reasons exists for the proposed sale: the transaction will allow the Debtor to pay Fannie Mae and all other creditors in full and in cash, and the members of the Debtor, who are entitled to receive all sale proceeds, net of creditor claims, support the Purchase Agreement and the purchase price. If the bankruptcy process is primarily about protecting creditor rights and satisfying debtor obligations, the Debtor's entry into the Purchase Agreement is a clear exercise of sound business judgment.

25. Courts typically look to a trustee's or debtor in possession's business judgment in analyzing an asset sale under section 363(b). MCSGlobal Incorporated, id.; see also In re Alpha Nat. Res. Inc., 546 B.R. 348, 356 (Bankr. E.D. Va. 2016). In Lionel, the Second Circuit laid out a number of factors for bankruptcy courts to consider in evaluating whether a debtor has exercised sound business judgment in seeking a pre-confirmation sale of all or key assets. 722 F.2d at 1071. Those factors include, *inter alia*, the proportionate value of the asset being sold to the estate as a whole, the effect of the proposed sale on a future plan of reorganization, and "most importantly perhaps, whether the asset is increasing or decreasing in value."

26. Embedded in the foregoing business judgment factors is the implicit assumption that the proceeds of the proposed sale will be insufficient to pay all creditors in full. That

assumption does not apply here – creditors will be paid in full, rendering the typical business judgment analysis moot. Indeed, sound business judgment demands that the Debtor accept an offer that will pay its creditors in full and that is supported by the Debtor's members. It would be the reverse of sound business judgment for the Debtor to reject the NOVO offer and leave its creditors and members at risk of ultimate loss.

27.    The public interest may also be taken into account in considering whether a sound business reason exists for the sale. See In re Lady H Coal Co., 193 B.R. at 243, 245 (court approved sale of coal mine over piecemeal liquidation in part because purchaser expected to operate the mine, employ people in the community, retain some unionized workers, and make substantial capital expenditures to improve productivity). Fannie Mae has expressed concern to the Court about the Debtor's management and ability to maintain the Property and protect the interests of its residents.[6] Here, the sale will transfer the Property to NOVO, an enterprise with many years of local real estate management and development experience, who can reasonably be expected to manage the Property in a highly professional way.

---

[6] The Debtor the does not accept Fannie Mae's concerns and contends to the contrary that it has managed well, and made improvements to, the Property during the course of its ownership.

**B.      The Sale Has Been Proposed In Good Faith**

28.     In connection with a proposed sale, "[g]ood faith encompasses fair value, and further speaks to the integrity of the transaction. Typical bad faith or misconduct, would include collusion between the seller and buyer, or any attempt to take unfair advantage of other potential purchasers." 240 North Brand Partners, Ltd., 200 B.R. 653, 659 (9th Cir. B.A.P. 1996) (quoting In re Wilde Horses, Inc., 136 B.R. 830, 842 (Bankr. C.D. Cal. 1991)). "Although 'good faith' is not defined in the Bankruptcy Code, courts generally look to the purchaser's conduct during the course of the sale proceedings." In re Flour City Bagels, 557 B.R. at 80-81.

29.     The Purchase Agreement is the product of arm's length negotiations between two unrelated parties, the purchase price is sufficient to pay all creditor claims, and NOVO has committed to the transaction by making a $200,000 earnest money deposit. Further, NOVO has a long history of managing and investing in real properties and is not an insider as to the Debtor or any of its members. See Id. at 78 ("The consideration of the good faith of the buyer is particularly relevant in a sale to an insider."). Accordingly, the Debtor submits that the sale has been proposed in good faith.

**C.      Creditors and Parties in Interest Have Received Adequate and Reasonable Notice**

30.     In the context of a section 363(b) sale, "notice is sufficient if it includes the terms and conditions of the sale, if it states the time for filing objections, and if the estate is selling real estate, it generally describes the property." In re WBQ P'ship, 189 B.R. at 103 (quoting In re Karpe, 84 B.R. 926, 930 (Bankr. M.D. Pa. 1988)).

31.     The Debtor is serving this Motion (to which the Purchase Agreement is attached as an exhibit) and the accompanying Notice of Opportunity to Object on the entire service list for this case, including all known creditors, contract counterparties, residents of the Property,

owners, holders of equity interests in the Debtor, and parties that have filed a notice of appearance in this case. This notice satisfies the reasonable and adequate notice requirement, because the documents being served describe the Property, include the terms and conditions of the sale, and state the time for filing any objections or opposition thereto.

32.     Some courts have indicated that adequate notice for a section 363(b) sale requires the same level of information contained in a section 1125 disclosure statement supporting a plan: "[B]ecause the proposed sale of substantially all of the Debtor's assets is the functional equivalent of a plan, the creditors and parties in interest [are] entitled to the functional equivalent of a disclosure statement." In re Flour City Bagels, 557 B.R. at 82 (quoting In re Tempnology LLC, 542 B.R. 50, 52 (Bankr. D.N.H. 2015)).  In this case, however, the proposed sale will allow the Debtor to pay creditors in full and in cash either through a structured dismissal of the case or upon the effective date of a plan.  Thus, under section 1124 of the Code, all classes of creditors under a plan would be unimpaired, and under section 1129(a) of the Code, such classes would not be entitled to vote on a plan.  Under these circumstances, there is no need for the equivalent of a disclosure statement – the key relevant data are the terms of the sale and the fact that the sale will generate sufficient cash proceeds to pay all claims in full.

**D.     The Purchase Price Is Fair and Reasonable**

33.     Because the purchase price under the Purchase Agreement will generate sufficient proceeds to allow the Debtor to pay all claims in full and in cash, it is inherently fair and reasonable, and no further marketing is necessary or appropriate.

## III.

## THE COURT SHOULD AUTHORIZE THE SALE OF THE
## PROPERTY FREE AND CLEAR OF ALL LIENS AND INTERESTS

34. Section 363(f) allows for sales of property of the estate under section 363(b) "free and clear of any interest" if any one of the following five conditions is met:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

35. Section 363(f)(3) is satisfied as to Fannie Mae's liens (and any statutory liens) against the Property because the sale price under the Purchase Agreement is greater than the aggregate value of all liens against the Property.[7]

36. Section 363(f)(2) will be satisfied should Fannie Mae consent to the sale under the Purchase Agreement.

37. The Debtor is unaware of any other voluntary liens against the Property or any interests relating to the Property which are not subject to one or more provisions of section

---

[7] As of the filing of this Motion, the Debtor and Fannie Mae have not agreed upon the full amount of Fannie Mae's claim. If the parties have not reached agreement on Fannie Mae's claim prior to closing under the Purchase Agreement, the Debtor proposes paying Fannie Mae all of the principal amount of its claim and all undisputed amounts of interest and other charges, pending an agreement or ruling by this Court as to the amounts due Fannie Mae. The Debtor will place into an appropriate escrow account an amount sufficient to pay Fannie Mae all disputed amounts plus interest and other charges accruing on such amounts, with Fannie Mae's liens attaching to the escrowed funds.

363(f). The Debtor intends to pay any and all unpaid real estate taxes and charges for utilities relating to the Property from the proceeds of sale at closing.

38. The sale will be subject to all existing tenant leases for apartment units at the Property.

## WAIVER OF MEMORANDUM OF LAW

39. The Debtor respectfully requests that this Court treat this Motion as a written memorandum of points and authorities in accordance with Local Bankruptcy Rule 9013-1(b)(2).

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Debtor respectfully requests that the Court exercise its power under sections 363(b) and (f) of the Bankruptcy Code to authorize the sale of the Property to NOVO free and clear of liens and interests on the terms and conditions specified in the Purchase Agreement, and that the Court grant the Debtor such other and further relief as is just and proper.

Dated: October 27, 2017

Respectfully submitted,

*/s/ Stephen E. Leach*
Stephen E. Leach (D.C. Bar No. 925735)
Kristen E. Burgers (D.C. Bar No. 500674)
HIRSCHLER FLEISCHER PC
8270 Greensboro Drive, Suite 700
Tysons, Virginia  22102
Telephone:   (703) 584-8900
Fax:              (703) 584-8901
Email:           sleach@hf-law.com
                    kburgers@hf-law.com

*Counsel to the Debtor-in-Possession*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2017, a correct copy of the foregoing Debtor's Motion for an Order Approving Sale of Debtor's Real Property Free and Clear of Liens and Interests and proposed Order was served by first-class mail, postage prepaid, upon the parties on the attached service list.

*/s/ Stephen E. Leach*
Stephen E. Leach

## SERVICE LIST

## CREDITORS AND RULE 2002 NOTICE PARTIES

**Bradley D. Jones**
Office of the US Trustee
115 S. Union Street, Room 210
Alexandria, VA  22314

**A. Carter Nowell**
6807 Bradley Boulevard
Bethesda, MD  20817

**John G. McJunkin**
J. David Folds
Baker Donelson Bearman Caldwell
901 K Street, NW, Suite 900
Washington, DC  20001

**Wendy Stark, VP & General Counsel**
PEPCO
701 9th Street, NW
Washington, DC  20068

**Leslie T. Thornton, Sr. VP & General Counsel**
Washington Gas
101 Constitution Avenue, NW
Washington, DC  20001

**Arthur R. Block, Executive VP,**
General Counsel & Secretary
Comcast Corporation
1701 JFK Boulevard
Philadelphia, PA  19103

**George S. Hawkins, CEO & General Manager**
DC Water and Sewer Authority
5000 Overlook Avenue, SW
Washington, DC  20032

**Henderson J. Brown, IV, General Counsel**
DC Water and Sewer Authority
5000 Overlook Avenue, SW
Washington, DC  20032

**Brian L. Roberts, Chairman/CEO**
DC Water and Sewer Authority
5000 Overlook Avenue, SW
Washington, DC  20032

**Lowell C. McAdam, Chairman & CEO**
Verizon -- Headquarters
1095 Avenue of the Americas
New York, NY  10036

**Craig Silliman, Exec. VP-Public Policy & GC**
Verizon -- Headquarters
1095 Avenue of the Americas
New York, NY  10036

**American Express**
PO Box 1270
Newark, NJ  07101

**Castro Landscaping LLC**
c/o Manuel Castro
12714 Parkland Avenue
Rockville, MD  20853

**Catalyst Property Solutions**
Paula Forshee, Receiver
1151 Brittmoore Road, Suite B
Houston, TX  77043

**Centric Leasing**
DeLage Landon Financial
PO Box 41602
Philadelphia, PA  19101-1602

**Kermit A. Rosenberg**
Bailey & Ehrenberg PLLC
1015 15th Street, NW, Suite 204
Washington, DC  20036

**DC Office of Tax and Revenue**
PO Box 96165
Washington, DC  20090-6165

**DC Treasurer-Real Property Tax Admin.**
PO Box 98095
Washington, DC  20090

**DC Water and Sewer Authority**
PO Box 97200
Washington, DC  20090

**Envirosolutions Inc.**
9650 Hawkins Drive
Manassas, VA  20109

**F.H. Star Painting Services**
14708 Flinstone Lane
Silver Spring, MD  20905

**HayStack ID**
1400 16th Street, NW, Suite B-01
Washington, DC  20036

**Musolino & Dessel PLLC**
1615 L Street, NW, Suite 440
Washington, DC  20036

**Nextility**
1606 20th Street, NW, 2nd Floor
Washington, DC  20009

| | | |
|---|---|---|
| **Oakmont Management Group**<br>7605 Arlington Road, Suite 250<br>Bethesda, MD  20814 | **Pitney Bowes**<br>500 Ross Street, Suite 154-0470<br>Pittsburgh, PA  15262 | **Realpage**<br>PO Box 671777<br>Dallas, TX  75267-1777 |
| **Rent Controlled Consultants Inc.**<br>60 Market Street, Suite 211<br>Bethesda, MD  20814 | **Rocha & Company PC**<br>9841 Washingtonian Boulevard<br>Gaithersburg, MD  20878 | **State of Delaware-Div. of Corps.**<br>PO Box 898<br>Dover, DE  19903 |
| **Tasco**<br>9200 Cody<br>Overland Park, KS  66214-1734 | **Terminix Commercial**<br>9475 Lottsford Road, Suite 165<br>Upper Marlboro, MD  20774 | **US Bank Equipment Finance**<br>1310 Madrid Street<br>Marshall, MN  56258-4002 |
| **Washington, Gas**<br>PO Box 37747<br>Philadelphia, PA  19101 | **WGCF Solar Services LLC**<br>RA:  Corporate Creations Network Inc.<br>3411 Silverside Road, Suite 104<br>Wilmington, DE  19810 | **DC Treasurer-Office of Admin. Hearings**<br>441 4th Street, NW, Suite E500<br>Washington, DC  20024 |
| **DC Treasurer-DCRA Agency Fiscal Officer**<br>11400 4th Street, SW<br>Washington, DC  20024 | **DC Water and Sewer Authority**<br>5000 Overlook Avenue, SW<br>Washington, DC  20032 | **Oakmont Management LLC**<br>c/o Oakmont Management Group<br>7605 Arlington Road, Suite 250<br>Bethesda, MD  20814 |
| **Washington Gas**<br>Attn:  Customer Care<br>6801 Industrial Road<br>Springfield, VA  22151 | **PEPCO**<br>P.O. Box 13608<br>Philadelphia, PA 19101-3608 | **Castrohasse**<br>1129 20th Street, NW, Suite 300<br>Washington, DC  20036 |
| **Dept. of Consumer & Regulatory Affairs**<br>1100 4th Street, SW<br>Washington, DC  20024 | **DC Housing Authority**<br>1133 N. Capitol Street, NE<br>Washington, DC 20002 | **Innovative Pest Management**<br>12240 Indian Creek Court, Suite 140<br>Beltsville, MD  20705 |
| **DC Treasurer**<br>Office of Tax & Revenue<br>P.O. Box 37559<br>Washington, DC 20013 | **NOVO Development Corp.**<br>519 11th Street, SE<br>Washington, DC  20013 | **Comcast SE PA**<br>PO Box 3005<br>Southeastern, PA  19398 |

**Verizon**
**PO Box 3397**
**Bloomington, IL  61702**

## **TENANTS**

**Alan Banks**
**315 Franklin Street, NE, #103**
**Washington, DC  20002**

**Albert Strong**
**325 Franklin Street, NE, #5**
**Washington, DC  20002**

**Andrew Barnhardt**
**325 Franklin Street, NE, #106**
**Washington, DC  20002**

**Aquilino Portillo**
**315 Franklin Street, NE**
**Washington, DC  20002**

**Arnell Marshall**
**315 Franklin Street, NE, #302**
**Washington, DC  20002**

**Ashley Hertel-Pinkney**
**315 Franklin Street, NE, #304**
**Washington, DC  20002**

**Avant Mosley**
**325 Franklin Street, NE, #206**
**Washington, DC  20002**

**Barbara Smith**
**315 Franklin Street, NE, #201**
**Washington, DC  20002**

**Bernard Wayne**
**325 Franklin Street, NE, #306**
**Washington, DC  20002**

**Bobby Gentry**
**315 Franklin Street, NE, #110**
**Washington, DC  20002**

**Carlton Coleman**
**325 Franklin Street, NE, #204**
**Washington, DC  20002**

**Clarence Thompson**
**315 Franklin Street, NE, #209**
**Washington, DC  20002**

**Darrick Ross**
**325 Franklin Street, NE, #102**
**Washington, DC  20002**

**Davon Keys**
**325 Franklin Street, NE, #111**
**Washington, DC  20002**

**December Powell**
**315 Franklin Street, NE, #104**
**Washington, DC  20002**

**Donald Stewart**
**315 Franklin Street, NE, #305**
**Washington, DC  20002**

**Donna Baxter**
**315 Franklin Street, NE, #303**
**Washington, DC  20002**

**Dorian Ross**
**315 Franklin Street, NE, #307**
**Washington, DC  20002**

**Edward Nettles**
**325 Franklin Street, NE, #205**
**Washington, DC  20002**

**Elsie Smith**
**315 Franklin Street, NE, #101**
**Washington, DC  20002**

**Eunice Elliott**
**315 Franklin Street, NE, #109**
**Washington, DC  20002**

**Gail Travers**
325 Franklin Street, NE, #101
Washington, DC  20002

**Harvey Robinson**
325 Franklin Street, NE, #309
Washington, DC  20002

**Jeff Davis**
315 Franklin Street, NE, #310
Washington, DC  20002

**Jeffrey Clark**
325 Franklin Street, NE, #109
Washington, DC  20002

**Jerome Randall**
325 Franklin Street, NE, #305
Washington, DC  20002

**Jesse Johnson**
325 Franklin Street, NE, #311
Washington, DC  20002

**Joaquin Flores**
315 Franklin Street, NE, #B1
Washington, DC  20002

**Joe Machado**
325 Franklin Street, NE, #208
Washington, DC  20002

**Joe Thorne**
325 Franklin Street, NE, #301
Washington, DC  20002

**Joellyn Welch**
315 Franklin Street, NE, #103
Washington, DC  20002

**John Roberts**
325 Franklin Street, NE, #110
Washington, DC  20002

**Joseph Parker**
325 Franklin Street, NE, #6
Washington, DC  20002

**Juan Hernandez**
315 Franklin Street, NE, #106
Washington, DC  20002

**Julius McBride**
325 Franklin Street, NE, #210
Washington, DC  20002

**Karen Marable**
325 Franklin Street, NE, #1
Washington, DC  20002

**Kenneth House**
325 Franklin Street, NE, #202
Washington, DC  20002

**Kenneth Mayo**
325 Franklin Street, NE, #308
Washington, DC  20002

**Kevin Adams**
325 Franklin Street, NE, #302
Washington, DC  20002

**Larry Pearson**
325 Franklin Street, NE, #310
Washington, DC  20002

**Layvetta Davis-Barnes**
315 Franklin Street, NE, #207
Washington, DC  20002

**Lillie Magwood**
325 Franklin Street, NE, #105
Washington, DC  20002

**Michael Eitzman**
325 Franklin Street, NE, #307
Washington, DC  20002

**Michael Veazey**
315 Franklin Street, NE, #210
Washington, DC  20002

**Patrice Ward**
325 Franklin Street, NE, #303
Washington, DC  20002

**Patricia Person**
315 Franklin Street, NE, #105
Washington, DC  20002

**Phillip Sims**
315 Franklin Street, NE, #308
Washington, DC  20002

**Priscilla Soribe**
325 Franklin Street, NE, #207
Washington, DC  20002

**Quentin Mercer**
315 Franklin Street, NE, #306
Washington, DC  20002

**Rafael Barahona**
315 Franklin Street, NE, #205
Washington, DC  20002

**Rene Hernandez**
315 Franklin Street, NE, #202
Washington, DC  20002

**Rishirl Singletary**
315 Franklin Street, NE, #203
Washington, DC  20002

**Robert Stokes**
315 Franklin Street, NE, #301
Washington, DC  20002

**Robert Theophile**
325 Franklin Street, NE, #211
Washington, DC  20002

**Roger Somervilel**
325 Franklin Street, NE, #304
Washington, DC  20002

**Ronald Freeman**
315 Franklin Street, NE, #206
Washington, DC  20002

**Ronald Kennedy**
325 Franklin Street, NE, #7
Washington, DC  20002

**Rose Boone**
325 Franklin Street, NE, #203
Washington, DC  20002

**Stephan Curry**
315 Franklin Street, NE, #7
Washington, DC  20002

**Steve Pharr**
325 Franklin Street, NE, #4
Washington, DC  20002

**Sylvester Pressley-Bey**
325 Franklin Street, NE, #103
Washington, DC  20002

**Tanesha Goggins**
315 Franklin Street, NE, #102
Washington, DC  20002

**Teunga Watson**
315 Franklin Street, NE, #B2
Washington, DC  20002

## MEMBERS OF THE DEBTOR

**Brooke Thorner**
2910 E. Madison, #209
Seattle, WA  98112

**David Walker**
3718 Falling Green Way
Mount Airy, MD  21771

**Deborah Grove**
5936 Elmer Derr Road
Frederick, MD  21703

**Eugene Prokopyschyn Sr.**
**Michelle Prokopyschyn**
3800 Meyer Lane
Hatboro, PA  19040

**Joseph Swiderski**
15401 Duckling Place
Woodbridge, VA  22191

**Kenneth Tighe**
626C Admiral Drive, #231
Annapolis, MD  21401

| | | |
|---|---|---|
| **Millenium Trust Company**<br>**f/b/o Thomas Trevino Family Trust**<br>**2001 Spring Road, Suite 700**<br>**Oak Brook, IL  60523** | **Millenium Trust Company**<br>**f/b/o C. Taylor & S. Barnes Revocable Trust**<br>**2001 Spring Road, Suite 700**<br>**Oak Brook, IL  60523** | **Millenium Trust Company**<br>**f/b/o Terrence Fitzpatrick IRA**<br>**2001 Spring Road, Suite 700**<br>**Oak Brook, IL  60523** |
| **Millenium Trust Company**<br>**f/b/o John Barrer IRA**<br>**2001 Spring Road, Suite 700**<br>**Oak Brook, IOL  60523** | **Millenium Trust Company**<br>**f/b/o Dale Lee Nelson IRA**<br>**2001 Spring Road, Suite 700**<br>**Oak Brook, IOL  60523** | **Millenium Trust Company**<br>**f/b/o Doug Mays IRA**<br>**2001 Spring Road, Suite 700**<br>**Oak Brook, IOL  60523** |
| **Sanford Capital III LLC**<br>**7605 Arlington Road, Suite 250**<br>**Bethesda, MD  20814** | **Steve Ruben**<br>**19420 Pyrite Lane**<br>**Brookeville, MD  20833** | |

9195358.1  042789.00001