UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| In re ] | |
| ] | |
| 315 FRANKLIN, LLC, ] | Case No. 17-00512 |
| ] | Chapter 11 |
| Debtor in Possession. ] | |

**OBJECTION TO DEBTOR'S MOTION FOR ORDER APPROVING SALE OF
DEBTOR'S REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS**

TO THE HONORABLE S. MARTIN TEEL, JR., BANKRUPTCY JUDGE:

COME NOW the following individual tenants ("Tenants") of the real property owned presently by 315 Franklin, LLC ("Debtor"), Joaquin Hernan Flores Cisneros, Patricia Persons, and Kevin R. Adamsby, by and through their undersigned attorneys, and as their Objection ("Objection") to Debtor's Motion ("Motion") for Order Approving Sale of Debtor's Real Property Free and Clear of Liens and Interests respectfully represent as follows:

1. This case was commenced on September 13, 2017, when the Debtor filed its voluntary petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §101, et seq. The Debtor currently serves as debtor in possession; no trustee has been appointed nor has a motion seeking the appointment of a trustee been filed with this Court. In addition, there is currently no receiver in place as a consequence of any litigation in a non-bankruptcy forum.

2. The Tenants are all individual tenants in residence at certain real property owned by the Debtor located at 315-325 Franklin Street, NE, Washington, DC ("Property"), which is a multiunit residential building located in Northeast Washington DC.

3. The Debtor has filed a motion ("Sales Motion") seeking the approval of this Court for its private sale of the Property under 11 U.S.C. §363 to an alleged third-party purchaser, NOVO Development Corporation ("Buyer"), pursuant to the terms of a contract, presented to this Court as an exhibit to the Sales Motion, dated September 12, 2017, the day before the Debtor initiated the instant case.

4. The Tenants object to the proposed sale and the granting of the Sales Motion, not because they necessarily believe that the proposed purchase price is inadequate, but because the physical condition of the Property is in extraordinary and substantial noncompliance with applicable District of Columbia housing law, and in continuing and accumulating breach of the warranty of habitability, including claims arising on behalf of the Tenants (and similarly situated individuals residing at the Property) whose claims may have arisen subsequent to the filing of the instant case, and whose claims would constitute administrative priority obligations of the Debtor and estate.[1] Among other things, the Tenants have had to live with rodents, bedbugs, roaches, leaks, water damage, mold, lack of heat and air conditioning, lack of hot water, problems with bathroom and kitchen appliances, and peeling paint. In addition, there have been serious security issues at the Property, because the Debtor has failed to maintain door locks or provide basic measures of security. As a result, many of the Tenants have been the victims of violence and other criminal activity in the common areas of the building. The Tenants have, for a period of years, been forced to live in conditions that are not safe, habitable, or secure.[2]

---

[1] The order authorizing the interim use of cash collateral (Docket 55) merely requires that the Debtor "shall maintain the Property in its present condition (ordinary wear and tear excepted)"; no remediation or other protections for the Tenants' rights or safety is provided in that order. There is no final order regarding cash collateral in place in this case.

[2] The Tenants hereby incorporate by reference (A) Exhibit 3 to Docket 32, *Limited Objection to Debtor's Motion for Interim and Final Orders Authorizing Use of Cash Collateral and Granting Adequate Protection*, which consists

2

5. Although the Debtor, in the Sales Motion, recites certain obligations of the Debtor with respect to the Property (which, presumably, would be paid at closing on the proposed sale to the Buyer), the Debtor has not fully disclosed its knowledge of the existing and continuing violations of the District of Columbia housing code, of which it has received, upon information and belief, multiple notices from the District of Columbia. While no formal litigation has been commenced by the Office of the Attorney General of the District of Columbia, seeking the appointment of receiver, forcing compliance with applicable housing code provisions governing the operation of the Property, and seeking any other appropriate relief, the existence of persistence of the violations of the applicable housing code warrant the disapproval of the proposed sale to the Buyer, in the absence of a comprehensive and acceptable plan to address and immediately remediate and rehabilitate the Property so it is in compliance with applicable non-bankruptcy law, especially those housing code provisions governing the operation of the Property, even in the hands of the Buyer.

6. Although this case is barely 60 days old, the obligation of the Debtor to operate the Property in conformity with applicable non-bankruptcy law, is nonetheless already and, since the filing of the petition herein, has already been, a fixed and immutable obligation of the Debtor. See 28 U.S.C. §959.  The existence and persistence of the un-remediated housing code violations committed and permitted by the Debtor both prior to the filing of the instant case and since the filing, require that the court condition any sale of the Property, whether to the Buyer or otherwise, upon compliance with 28 U.S.C. §959.  The Debtor should not be permitted to evade

---

of approximately 70 pages of official notifications of housing code violations from March 2017 alone; and (B) Exhibit A to Docket 66, *Supplemental Objection to the Debtor's Motion for Interim and Final Orders Authorizing Use of Cash Collateral and Granting Adequate Protection*, which consists of a "property condition report" performed at the request of FNAM, by Jeff Roden, a certified property inspector, indicating and confirming the terrible conditions of and at the Property.

its obligation to have operated the Property in conformity with applicable non-bankruptcy law by merely divesting itself of its ownership interest in favor of an alleged arm's-length third-party purchaser, such as the Buyer. Without editorializing or criticizing the Buyer in the instant case, it is unclear to the Tenants whether or not the Buyer intends to operate the Property in conformity with applicable non-bankruptcy law, especially the District of Columbia housing code; in the absence of such assurance, in the form of a remediation plan binding upon the Buyer, the Tenants oppose the proposed sale set forth in the Sales Motion.

7. The Tenants observe that the recitations in the Sales Motion are less than complete, given that the Sales Motion fails to disclose the notice to and knowledge of the Debtor with respect to numerous housing code violations, which, on information and belief, have been reported to it in March 2017 and again as recently as August 2017 (and the potentially substantial monetary damage claims of the Tenants who have had to suffer the deplorable conditions the Debtor allowed to exist and persist at the Property). In addition, it appears that the filing of the bankruptcy case on September 13, 2017, was intended to be a vehicle by which the Buyer could acquire the Property free and clear of all liens, claims and encumbrances (including, arguably, the claims of the Tenants), pursuant to a contract entered into the day *immediately prior* to the filing of this case (September 12).  The Tenants assume that the motivation behind the filing, as well as the purpose of its timing, can be established by further investigation on their behalf.

8. Unlike in similar cases involving similarly distressed property, especially those in the Sanford universe (see, e.g., Terrace Manor), the proposed disposition of the Property through the vehicle of the Sales Motion, rather than through the formulation and presentation of a Chapter 11 plan of reorganization both (a) disposes of, if not the entirety than the overwhelming majority, of the assets constituting property of this bankruptcy estate; and (b) does so without the protections

afforded creditors, including the Tenants, that exist with respect to the confirmation of any proposed Chapter 11 plan of reorganization. The disposition of a Chapter 11 case through the use of a motion fully or nearly disposing of all assets of the estate, and not under a Chapter 11 plan, is an inappropriate use of Chapter 11; the Sales Motion should be denied on the basis that it constitutes a *sub rosa* plan of reorganization. See, e.g., *In re Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir. 1983). While it is true in this Circuit that a debtor in possession may sell assets outside of the ordinary course of business pursuant to §363, there must be a sound business justification for doing so. See *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2nd Cir. 1983); *In re Naron & Wagner, Chartered*, 89 B.R. 85, 89 (Bankr. D. Md. 1988) (adopting standard set forth in Lionel Corp.); *McDow v. Official Committee of Equity Security Holders of Criimi Mae, Inc.*, 247 B.R. 146, 149 (D. Md. 1999) ("court may authorize the use of estate property other than in the ordinary course of business when some business justification for doing so exists"). There is no reason for doing so here. In fact, the Purchase Agreement between the Debtor and Buyer, filed with this Court as an exhibit to the Sales Motion, at ¶ 2.5 (titled "Closing"), states specifically that the closing on the sale to the Buyer "shall be thirty (30) days after the approval by the U. S. Bankruptcy Court of the Seller's 11 U.S.C. plan including this Property." Accordingly, both the Debtor and the Buyer contemplated that the Property would be sold pursuant to a Chapter 11 plan of reorganization, and not through the expedited and superficial process of approving a motion to sell under §363 of the Bankruptcy Code, as is sought through the Sales Motion. Further still, in that same paragraph, the Debtor and Buyer agree that they can mutually extend the closing date beyond the 30 days set forth in that paragraph (it does not appear, based only on a cursory review, that the Purchase Agreement contains a statement that "time is of the essence"). Because the contemplated sale to the Buyer disposes of all or nearly all of the assets

of the bankruptcy estate and moots any prospect for true reorganization, the agreement itself contemplates the filing of a Chapter 11 plan rather than a motion, and the closing deadline may be extended, there is no "sound business justification" for the Debtor to avoid compliance with the procedures for an protections of creditors provided in the confirmation process; disapproval of the Sales Motion is therefore warranted on this basis alone.

9. While the Tenants acknowledge that the proposed purchase price is attractive, relative to the acknowledged debts of the Debtor, nonetheless the Sales Motion should not be granted in the absence of protection for the Tenants, either by the Debtor or the Buyer, in the form of a prompt, comprehensive, and well-supported remediation plan addressing the legion violations of applicable non-bankruptcy law plaguing the Property.  Assuming such a plan can be established, the Tenants would likely welcome the replacement of the Debtor and its management with a new, responsible and respectable owner and management company unaffiliated in any manner with the Debtor and Sanford.

WHERFORE, the Tenants respectfully request the Court enter an order:

A.  Denying the Sales Motion; and

B.  Granting to the Tenants such other and further relief as is just and proper.

Dated: November 17, 2017                            Respectfully submitted,

 */S/ Jeffrey M. Sherman*
Jeffrey M. Sherman, DC Bar No. 348896
LAW OFFICES OF JEFFREY M. SHERMAN
1600 N. Oak Street #1826
Arlington, VA 22209
(703) 855-7394
jeffreymsherman@gmail.com
Pro Bono Attorneys for the Tenants

## CERTIFICATE OF SERVICE

       I hereby certify that a copy of the foregoing was served by first class mail, postage prepaid, or, where permitted, by electronic delivery, on November 17, 2017, upon the following:

| | |
|---|---|
| John G. McJunkin<br>J. David Folds<br>Baker Donelson<br>901 K Street NW<br>Suite 900<br>Washington, DC 20001<br>jmcjunkin@bakerdonelson.com<br>dfolds@bakerdonelson.com | Stephen E. Leach<br>Hirschler Fleischer<br>8270 Greensboro Drive<br>Suite 700<br>Tysons, VA 22102<br>sleach@hf-law.com |
| Emil Hirsch<br>Polsinelli<br>1401 Eye Street, N.W.<br>Suite 800<br>Washington, DC 20005<br>ehirsch@polsinelli.com | Kermit A. Rosenberg<br>Bailey & Ehrenberg, PLLC<br>1015 18th Street, NW<br>Suite 204<br>Washington, DC 20036<br>krosenberg@becounsel.com |
| Bradley David Jones<br>Office of the U.S. Trustee<br>115 South Union Street<br>Plaza Level<br>Suite 210<br>Alexandria, VA 22314<br>bradley.d.jones@usdoj.gov | Nancy L. Alper<br>Office of Attorney General for D.C.<br>441 4th Street, NW<br>Suite 6 North 93<br>Washington, DC 20001<br>nancy.alper@dc.gov |

                                                   */S/ Jeffrey M Sherman*
                                                   Jeffrey M Sherman